UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**FRED D. DOUTY,**

    **Plaintiff,**

v.                                                                         Case No. 2:13-cv-24714

**DAVID BALLARD, Warden, et al.,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the plaintiff's Motion for Preliminary Injunction (ECF No. 6). For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion for Preliminary Injunction (ECF No. 6) be **DENIED**.

## PROCEDURAL HISTORY

On October 7, 2013, the plaintiff filed his initial Complaint (ECF No. 2), in which he attempted to bring a class action under 42 U.S.C. § 1983, alleging violations of the plaintiff's and other similarly situated inmates' rights under the First, Eighth and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.* The basis of the plaintiff's Complaint is the alleged infringement of his right to express his religious beliefs in paperwork that must

be completed as part of the Quality of Life Program ("QOL" program) required by inmates housed in the segregation units at the Mount Olive Correctional Complex ("MOCC") in order to be returned to the general population of the prison. The plaintiff's Complaint further alleges violations of his rights to due process and equal protection under the Fourteenth Amendment and the right to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment.

On January 14, 2014, the plaintiff filed a Motion for Leave to File Amended Complaint (ECF No. 11), which has been granted by separate Order. The Motion for Leave stated that the plaintiff had determined that he could not pursue this matter as a class action, and that he wished to proceed only on his own behalf. The Motion for Leave also stated that the plaintiff's initial Complaint had failed to properly name all of the defendants. Then, on March 4, 2014, the plaintiff filed an Amended Complaint (ECF No. 12), which is the document upon which this matter shall now proceed.

On November 19, 2013, the plaintiff filed a Motion for Preliminary Injunction (ECF No. 6), a Declaration (ECF No. 7) and a Memorandum of Law in support thereof (ECF No. 8). That motion is the subject of this Proposed Findings and Recommendation.

The plaintiff's Motion for Preliminary Injunction (ECF No. 6) asserts that the "defendants as a whole have and continue to violate plaintiff's constitutional rights." (*Id.* at 1). The plaintiff seeks injunctive relief requiring the defendants to: (1) allow plaintiff to express religious opinions and/or speech on QOL packets and (2) other related material; (3) return the plaintiff to level three of the QOL program; (4) issue level three packets to the plaintiff; and (5) immediately return all of the plaintiff's privileges lost as a result of being dropped levels in the QOL program. (*Id.*)

The plaintiff contends that he will suffer irreparable injury without an injunction, and that the defendants' actions have forced him to choose between his Messianic Jewish beliefs or abiding by the defendants' own tenets, in order to get back into the general population at the prison. The motion further states:

> For expressing his religious beliefs in the QOL packets, plaintiff has been reduced in program levels, privileges, stripped and moved to QII Unit that is currently under Martial Law, morbid conditions, where prisoners are assaulted with chemical agents and riot weaponry daily. The plaintiff is at his breaking point, where he is ready to renounce Messianic Judaism and adhere to any beliefs or opinions defendants require of him in order to be releaved [sic; relieved] of any further physical and mental torment that's been inflicted upon him.

(ECF No. 6 at 2). The plaintiff further contends that he will suffer more without such an injunction than the defendants will suffer if the injunction is granted because he is being put in a position of renunciation of his religious beliefs. (*Id.*) The plaintiff's motion further states that "[t]he plaintiff has a sincere belief that if these opinions are not expressed, but [sic; or?] implemented in his daily activities and dealings in life he will not be rewarded the gift of eternal life, thus being put to the second death at the White Throne Judgment." (*Id.*) The plaintiff further asserts that he is likely to succeed on the merits of his claims which, he contends, raise serious questions concerning fundamental constitutional rights and the public interest of ensuring that the defendants' obey constitutional and other laws. (*Id.* at 3).

The plaintiff has filed his own declaration detailing the conduct that he believes has denied him free exercise of religious speech and expression, as well as several statements of other inmates, made under penalty of perjury, demonstrating the plaintiff's sincere devotion to his Messianic Jewish faith. (ECF No. 6-1 at 1-3; ECF No. 7). The plaintiff has also filed a Memorandum of Law in support of his motion, in which

he asserts that his circumstances meet the rigorous standard for granting preliminary injunctive relief. (ECF No. 8).

The plaintiff contends that he is threatened with irreparable harm through the continued deprivation of his rights because the defendants "have restricted his religious beliefs, dropping him in QOL program levels for said beliefs, stripping privileges, and forcing him to abandon Messianic Judaism beliefs, becoming kowtow to the defendants' own tenets in violation of 42 U.S.C. § 2000cc-1(a)." (ECF No. 8 at 4). The plaintiff further contends that defendants Mike Clemens "has warned the plaintiff he will only progress in QOL program levels once he tells Mr. Clemens, face to face, he will no longer write Messianic Jewish beliefs." (*Id.*)

Concerning the balance of hardships on the parties by the granting of an injunction, the plaintiff states:

> In this case, the present suffering of the plaintiff pressured to choose between his religious mitzvahs and returning back to general population with stripped privileges restored (i.e., only when plaintiff tells defendants he will no longer write religious opinions) are enormous. Inter alia, being reduced in levels and placed in QII Unit currently under Martial Law, macabre conditions, in order to force plaintiff into being kowtow and only writing defendants' tenets. The "sufferings" the defendants will experience if the Court grants the order will consist of spending far less of the state/federal money and staff man power by allowing plaintiff to advance in QOL level and leaving a controlled unit by allowing plaintiff his religious exercise – something that the defendants are obligated to do for members of the prison population on a daily basis. The defendants' hardship amounts to more cash and time being wasted by actually NOT allowing him the religious exercise he seeks in said motion.

(*Id.* at 5-6).

The plaintiff further asserts that he has a great likelihood of success on the merits of his claims because "intentionally interfering with religious exercise and speech" was specifically singled out by Congress as an example of unconstitutional "deliberate

4

indifference to prisoners' religious exercise" when the RLUIPA was enacted, and compliance with the law by prison officials serves the public interest. (*Id.* at 6-7).

## **STANDARD OF REVIEW**

Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The remainder of the rule addresses the procedure for a hearing on motions for a preliminary injunction and the scope of any such injunction. *Id.*

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*")[1], in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008). As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)(per curiam). * * *
>
> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. And all four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a

---

[1] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case. *See* 575 F.3d at 345-347.

5

>
> standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the irreparable harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts. *Id.*

## ANALYSIS

Although, once served with process, the defendants will be called upon to respond to the allegations in the plaintiff's Amended Complaint (ECF No. 12), the plaintiff's request for preliminary injunctive relief is speculative. As noted by the defendants, the plaintiff has only asserted theoretical future injury. A mere possibility of harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21. Thus, at present, the plaintiff has not clearly shown that he is likely to

succeed on the merits of his claims, or that he is likely to be irreparably harmed without preliminary injunctive relief. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated the need for a preliminary injunction under the circumstances.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Preliminary Injunction (ECF No. 6).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

7

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

August 5, 2014

Dwane L. Tinsley
United States Magistrate Judge