UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON


FRED D. DOUTY,

      Plaintiff,

v.                                          Civil Action No. 2:13-24714


DAVID BALLARD, Warden,
Mt. Olive Correctional Complex, and
PAUL PERRY, Associate Warden of Security,
Mt. Olive Correctional Complex, and
STEVE CAUDILL, Captain,
Mt. Olive Correctional Complex, and
RONNIE WILLIAMS, Captain,
Mt. Olive Correctional Complex, and
CHRIS BLAKE, Principal,
Mt. Olive Correctional Complex, and
JAMES PENNINGTON, Educational Instructor,
Mt. Olive Correctional Complex, and
MIKE CLEMENS, Case Manager,
Mt. Olive Correctional Complex,

      Defendants.


MEMORANDUM OPINION AND ORDER

      Pending are plaintiff's motion to amend the complaint, filed March 16, 2015, defendant Chris Blake's motion to dismiss the complaint, filed August 29, 2014, and a motion to dismiss filed by defendants David Ballard, Steve Caudill, Paul Perry, and Ronnie Williams, filed September 2, 2014.

This action was previously referred to Dwane L.
Tinsley, United States Magistrate Judge, who has submitted his
Proposed Findings and Recommendations ("PF&R") pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(B).  The magistrate judge
recommends in the PF&R that the court grant defendant Chris
Blake's motion to dismiss, as well as the motion to dismiss
filed by defendants Ballard, Caudill, Perry and Williams, and
dismiss this action.

On February 27, 2015, the PF&R was filed.  On March
12, 2015, plaintiff filed his objections.  The objections were
followed by his March 16, 2015, motion to amend the complaint.

The plaintiff's first two objections are imprecise.
He contends that the magistrate judge misapplied the Rule
12(b)(6) standards but he fails to specifically identify the
issues to which that asserted misapplication relates.  Inasmuch
as the court cannot determine the precise nature of these two
objections, they are not meritorious.

Plaintiff's third objection contends that the
magistrate judge improperly denied him the ability to conduct
discovery.  He asserts that answers he provided to questions
posed to him in Quality of Life ("QOL") materials, which he

purposely answered in a nonsensical and offensive manner, demonstrate a need for discovery.[1]  The contention is unsupported.  It appears that the materials necessary for plaintiff to challenge QOL program requirements are already in his possession.  He also asserts that he needs to know the "in-depth intricate details about" the "martial law" program at the facility but fails to explain how that discovery will further his claims herein.[2]

_____

[1] The QOL program is a behavior driven, progressive incentive system consisting of five levels. Inmates qualify for advancement to the next level by completing required behavioral and educational programs.  Some of the answers provided by plaintiff on his Quality of Life materials include the following:

   1. "Anger can be reduced by eradicating jews [sic] and christians [sic]"

   2. "[I]t's worth listening to the aliens after being probed in your holes."

   3. "My anger makes me want [to] chop up some red-neck chicken necks like your mom."

(Objecs. Ex. A at 1).  Plaintiff claims he responded this way in order to demonstrate flaws in the QOL program and that the answers were deemed acceptable by correctional officials.  The court is unable to draw that inference from the two exhibits to which Mr. Douty has drawn attention.  Exhibit A, page 1, is the journal entry in which the above comments appear.  Exhibit A, page 2, is simply a generic notification that he completed all of the lessons in the QOL program.  There is no indication that corrections officials ever saw the subject journal entry.

[2] Plaintiff uses the phrase to connote an alleged policy that putatively permits unreasonable uses of force against

3

Plaintiff's fourth objection is that Count One of his complaint should not have been recommended for dismissal. Count One alleges a deprivation of his religious liberties in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(1)-(2), Pub. L. No. 106-274, 114 Stat. 803 ("RLUIPA"). The magistrate judge recommends dismissal of the RLUIPA claim. Plaintiff asserts, in part, that certain privileges were removed pending his forced disavowal of his Jewish beliefs. He cites Exhibit B in support. Exhibit B, however, deals only with his non-receipt of correspondence text books. Correctional officials advised him that he could not participate in correspondence courses until he returned to the general population. He offers no plausible allegation that animus motivated that decision.

The magistrate judge's recommendation is correct. Correctional officials have demonstrated that plaintiff has multiple alternative outlets to exercise his religious beliefs and that the requirement of religious-neutral responses on the QOL forms does not constitute a substantial burden. In the event plaintiff had demonstrated a substantial burden on his

---

inmates in the segregation units, essentially suspending the usual rules and regulations on the proper use of force.

free exercise, the requirement that he complete his educational programming in a manner demonstrating mastery of the materials deemed necessary to his safe and smooth return to the general population furthers a compelling governmental interest and is the least restrictive means of achieving the same.  The objection is not meritorious.

Plaintiff's fifth objection challenges the recommended dismissal of Count Two.  Count Two alleges a denial of due process arising out of correctional officials' failure to allow him to attend his PRO-committee hearing on May 22, 2013, and denying him the right to present evidence in his favor.  The PRO committee is explained at page 18, footnote 3 of the PF&R.  As noted by the magistrate judge, success on the due process claim hinges upon plaintiff demonstrating that the burden he suffered constitutes an atypical and significant hardship.

Our court of appeals recently observed the Supreme Court's admonition that "'[t]he difficulties of operating a detention center must not be underestimated by the courts," and that "'correctional officials . . . must have substantial discretion to devise reasonable solutions to the problems they face.'"  <u>Prieto v. Clarke</u>, 2015 WL 1020718, 7 (4th Cir. Mar. 10, 2015) (quoting <u>Florence v. Bd. of Chosen Freeholders</u>, --- U.S. –

---, ----, 132 S. Ct. 1510, 1515, 182 L.Ed.2d 566 (2012)).  The magistrate judge correctly concluded that plaintiff did not suffer an atypical and significant hardship.  That results in the follow-on conclusion that he has failed to demonstrate either a liberty interest or his right to a hearing or other process under the circumstances presented.  The objection is not meritorious.

        Plaintiff's sixth objection contends the magistrate judge erred in recommending Count Three be dismissed.  Count Three alleges a violation of the Eighth Amendment prohibition on cruel and unusual punishment.  As noted by the magistrate judge, plaintiff alleges that he was transferred from the Quilliams I segregation unit to the Quilliams II unit that is under "martial law" in retaliation for failing to denounce his Jewish faith. He claims those penalties were reversed after he wrote certain anti-Semitic statements on his QOL materials.

        Plaintiffs' objections do not cure the fundamental defect in his amended complaint.  His assertions, as the magistrate judge noted, "contain[] nothing more than conclusory statements that the defendants placed him in the most restrictive area of the prison as a punishment for expressing his religious beliefs."  (PF&R at 27).  In his objections,

plaintiff appears to point to the uses of unreasonable force on unnamed fellow inmates and unspecified failures to temper the force used in the facility.  The absence of particularity is troubling, especially given the veritable roadmap offered by the magistrate judge concerning the defects in the amended complaint.  The court concludes the objection is not meritorious.

Plaintiff's seventh objection asserts that the magistrate judge erred in recommending dismissal of Count Four. Court Four alleges an equal protection violation.  As the magistrate judge notes, the claim is largely duplicative of the allegations in Count One.  That observation aside, plaintiff has persistently declined the invitation to explain the most basic element of his equal protection claim.  The magistrate judge observed as follows:

> The plaintiff's Responses do not specifically address
> the defendants' contention that he must be able to
> demonstrate that he was treated differently than other
> similarly-situated inmates in the QOL program. He
> simply conclusively states that his allegations are
> sufficient to state a plausible claim that he was
> discriminated against and denied equal protection.

(PF&R at 29).  The same deficiency identified by the magistrate judge remains unaddressed in plaintiff's objections.  He has failed to explain how he was treated differently than other

7

similarly-situated inmates in the QOL program.  His objection is thus not meritorious.

The eighth objection contends that the recommended dismissal of Count Five is erroneous.  Count Five alleges that plaintiff's freedom of speech has been abridged.  The claim is controlled by the analysis prescribed in our court of appeals' recent decision in Wall v. Wade, 741 F.3d 492 (4th Cir. 2014), which revisited the factors first announced in Turner v. Safley, 482 U.S. 78 (1987):

> A prison regulation is reasonable and thus permissible if it satisfies the four factors established in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). That test asks: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action. Lovelace, 472 F.3d at 200 (citing Turner, 482 U.S. at 89–92, 107 S. Ct. 2254).

> As a preliminary matter, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005); see Gillette v. United States, 401 U.S. 437, 457, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) ("[T]he 'truth' of a belief is not open to question; rather,

> the question is whether the objector's beliefs are
> 'truly held.'") (internal quotation marks omitted).
> Accepting that prisons may limit religious
> accommodations to sincere believers, the question in
> this case is whether ROSP's specific means of testing
> Wall's sincerity was permissible; that is, whether
> ROSP was allowed to require him to possess specific,
> physical items of Islamic faith as proof of belief.

<u>Wall</u>, 741 F.3d at 499.

First, defendants appear to assert that plaintiff's QOL responses were not indicative of one pursuing a good faith effort to demonstrate the behavioral skills and attitude necessary to reside peacefully and compliantly in the general population.  Even if this assessment involved a suspicion that plaintiff's religious-based beliefs were not truly held based upon his conduct, it would not necessarily be unlawful under <u>Wall</u>.  In any event, the circumstances here do not give rise to a conclusion that the QOL response procedure was arbitrary or irrational.

Second, it appears undisputed that plaintiff may generally speak and write freely respecting his religious beliefs.  He thus has alternative means of exercising his First Amendment rights.  Third, the need for compliant responses beyond those devoted entirely to religious beliefs are apparently deemed necessary in order for corrections officials

to accurately appraise how plaintiff will interact with staff
and inmates once returned to the general population.  There does
not appear to be any "obvious, easy alternatives" for the more
probing and searching responses apparently desired by
corrections officials.  Under Wall and Safley, then, the
restrictions placed upon plaintiff's responses do not offend his
freedom to otherwise speak freely.  His objections to the
contrary are not meritorious.

        The final objection is plaintiff's contention that he
should have been given leave to amend his amended complaint.
The court considers the objection in tandem with his recently
filed motion to amend, which arrived well after the PF&R on
March 16, 2015.  The motion to amend, which is vague and spans a
single paragraph, does not attach a proposed second amended
pleading.

        On August 5, 2014, the magistrate judge permitted
filing of the amended complaint.  Following filing of the
motions to dismiss, plaintiff had a period of six months to seek
a further amendment.  The docket discloses he failed to move to
amend the complaint during that time frame.  The motion came
only after the PF&R was filed.  The court concludes the
amendment comes too late.  Permitting the amendment at this time

would, among other things, prejudice the defendants, who are poised to have their substantial dispositive motions adjudicated.  This is especially so inasmuch as plaintiff provides only the most minimal detail respecting how he plans to amend his pleading, thus thwarting a futility analysis.

Based upon the foregoing discussion, it is ORDERED as follows:

1.  That the PF&R be, and it hereby is, adopted and incorporated herein;

2.  That the motion to amend be, and hereby is, denied; and

3.  That this action be, and hereby is, dismissed and stricken from the docket.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and plaintiff.

ENTER:  March 18, 2015

John T. Copenhaver, Jr.
United States District Judge

11